# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BROOKSGREENBLATT, L.L.C.

VERSUS

C. MARTIN COMPANY, INC.

CIVIL ACTION

NO. 08-454-BAJ-SCR

## RULING

This matter is before the Court on a motion by third-party plaintiff, C. Martin Company, Inc. ("C. Martin") for summary judgment as to its claims against defendants, Superior Logistics, LLC ("Superior") and John Lee Harden, Jr. ("Harden") and for default judgment as to its claims against defendants, Richard G. Poore ("Poore"), and Carlos Johnson ("Johnson") (doc. 116). The motion is opposed by defendant, Harden (doc. 117). Jurisdiction is based on 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

Pursuant to Local Rule 56.1, C. Martin has submitted the following facts which it claims are material to the motion for summary judgment. Because the facts

are not controverted pursuant to Local Rule 56.2,[1] they are deemed admitted for purposes of the pending motion for summary judgment.[2]

1. C. Martin, as Buyer, and Superior, as Seller, entered into the Subcontract Agreement ("Subcontract") dated August 6, 2007, whereby Superior agreed to perform a part of C. Martin's prime contract, HSFEHQ-06-D-0381, issued by the Department of Homeland Security, and C. Martin agreed to pay Superior for such work. (Laine Affidavit, ¶3 and doc. 116, Ex. 1).

2. BrooksGreenblatt, L.L.C., now known as Fidelity Working Capital, L.L.C. ("Fidelity"), as Factor, and Superior as Vender, and Harden, Poore, and Johnson as Guarantors, entered into the Factoring and Security Agreement ("Factoring Agreement") dated May 8, 2007, whereby Fidelity advanced money to Superior on invoices owed to Superior and Superior assigned to Fidelity, and granted a security interest to Fidelity in, those invoices and accounts receivable. (Anderson Declaration, ¶4 and doc. 116, Ex. 1(a)).

3. Fidelity recorded a UCC financing statement with the Clerk of Court for East Baton Rouge Parish, Louisiana, as to the accounts of Superior secured pursuant to the Factoring Agreement. (Anderson Declaration, ¶5 and doc. 116, Ex. 1(b)).

4. Pursuant to the Factoring Agreement, Superior assigned to Fidelity, and granted a security interest to Fidelity in, all of the invoices and accounts receivable owed by C. Martin to Superior

---

[1]Uniform Local Rule 56.2 provides:
   Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

[2]The Court repeats herein only those undisputed facts set forth that are pertinent to this ruling.

2

under the Subcontract. (Anderson Declaration, ¶¶ 4-6 and doc. 116, Exs. 1(a), 1(b), 1(c)).

5.     Harden, as managing member of Superior, together with Louis K. Greenblatt, as managing member of BrooksGreenblatt (Fidelity), signed the letter addressed to C. Martin dated August 22, 2007, notifying that Superior had assigned its accounts receivable to Fidelity and instructing C. Martin to pay all indebtedness it owed to Superior payable and mailed to: SUPERIOR LOGISTICS, c/o BrooksGreenblatt, LLC, P.O. Box 2671, Baton Rouge, LA 70821-2671. (Anderson Declaration, ¶¶ 6, 13 and Exs. 1(c), 1(f)).

6.     Thereafter, Superior submitted invoices to C. Martin for payment, and, on invoices approved by C. Martin, C. Martin mailed checks payable to Superior at the above address. (Laine Affidavit, ¶12 and doc. 116 Ex. 4; Harden Deposition, pp. 66, 70 and doc. 116 Ex. SL9).

7.     C. Martin sent to Superior's office address at 5425 Galleria Drive, Suite D. Baton Rouge, LA, 70816, the check of C. Martin payable to Superior in the sum of $290,000.00 dated August 11, 2008, in payment of invoices owed by C. Martin to Superior. (Laine Affidavit, ¶12 and doc. 116, Ex. 4; Harden Deposition, pp. 66, 70, and doc. 116, Ex. SL9).

8.     The C. Martin check in the sum of $290,000.00 was received by Superior at its office address at 5425 Galleria Drive, Suite D, Baton Rouge, Louisiana, 70816. (Harden Deposition, pp. 66, 70).

9.     Superior did not deliver or remit to Fidelity the C. Martin check payable to Superior in the sum of $290,000.00. (Harden Deposition, pp. 71, 74, 75; Anderson Declaration, ¶¶19-20).

10.    After Superior received the C. Martin check payable to Superior in the amount of $290,000.00, it was placed in the hands of Harden, and after Harden consulted with his attorney, he had the check deposited in Superior's checking account, and had

3

Superior pay the funds from that check to creditors of Superior other than Fidelity. (Harden Deposition, pp. 66, 70, 71, 74, 75).[3]

11.     On July 23, 2008, Fidelity filed its Complaint against C. Martin, commencing this action. Plaintiff seeks a judgment in the sum of $372,100.00, plus interest, reasonable attorney fees, and costs for alleged invoices of Superior to C. Martin which were not paid by C. Martin to Fidelity. The $372,100.00 sum includes the $290,000.00 that Superior failed to remit or pay to Fidelity. (Doc. 1).

12.     At a mediation on April 5, 2011, C. Martin and Fidelity entered into a tentative settlement agreement whereby C. Martin would pay Fidelity the sum of $290,900.00 plus up to the maximum sum of $3,000.00 of out of pocket costs incurred by Fidelity in this suit, with other terms and conditions to consummate a settlement between them. (Craig Declaration, §3; Dore Declaration, §3).

13.     The tentative settlement was approved by the board of Directors of C. Martin, who authorized Laura Craig ("Craig") to enter into the tentative settlement agreement and sign documents on behalf of C. Martin. (Craig Declaration, §3; Ex. P-6A).

14.     Pursuant to the settlement, C. Martin and Fidelity entered into a Compromise, Settlement and Release Agreement. (Ex. P-6).

---

[3]The record demonstrates that, when Harden was asked at his deposition why he deposited the check into the Superior account rather than forward it to BrooksGreenblatt, he stated:

> Like all the other previous checks because I had a decision to make as a company do I deal with one lawsuit or 10 lawsuits? I chose to deal with one. Meaning I either had to have a lawsuit with all the subcontractors I owed because the check that I received from C. Martin should have gone to BrooksGreenblatt – first of all, it wasn't all the money that was due. It wasn't enough money to pay off BrooksGreenblatt but it was enough to pay the lion's share of my subcontractors.

(Harden Deposition, p. 71).

4

15. Agents for C. Martin and Fidelity agreed that documentary evidence supported a payment by C. Martin to Fidelity of $2,527.80 for costs.

16. On July 15, 2011, C. Martin paid to Fidelity the sum of $293,427.80 to consummate the settlement. (Craig Declaration; Dore Declaration, ¶6; Ex. P-8).

17. Pursuant to the settlement agreement, C. Martin and Fidelity executed an Act of Release, Conventional Subrogation, and Assignment. (Lockridge Declaration; Exhibit P-10).[4]

18. Paragraph 2 of the Act of Release, Conventional Subrogation, and Assignment, provides that:

> In consideration of the aforementioned sum of $293,427.80 paid by Fidelity to C. Martin, Fidelity conventionally subrogates and assigns unto C. Martin that one certain Factoring Agreement, and any and all claims, rights, and causes of action Fidelity has under the Factoring Agreement against Superior Logistics, LLC, John Lee Harden, Jr., Richard G. Poore, and Carlos Johnson.

(Ex. P-10, ¶2; doc. 116, p. 131).

C. Martin has submitted a copy of the Factoring Agreement (doc. 116, pp. 36-45). The agreement identifies BrooksGreenblatt as the "Factor" and Superior as the "Vendor" and provides, in pertinent part, that:

> Vendor does hereby agree to sell, transfer, and assign certain accounts receivable and related invoices arising

---

[4]C. Martin had filed the third-party complaint in this matter against Superior Logistics, LLC, John Lee Harden, Jr., Richard G. Poore, and Carlos Johnson on October 8, 2008 (doc. 11).

5

from the sale of goods or services and does hereby grant, in favor of Factor a continuing security interest in that property described herein below, all as more specifically set forth herein below, pursuant to the following terms and conditions.

(Doc. 116, p. 36). The agreement specifically addresses the breach alleged by C. Martin, by providing:

Vendor agrees that, within twenty-four (24) hours of receipt of any payment of any Receivable, purchased hereunder, to deliver to Factor the original check, . . . or other forms of payment. Should Vendor fail to do so, Vendor agrees to pay a penalty of fifteen (15.00%) of the amount of such payment.

(*Id.* at 41, ¶ 3(l). The agreement also provides for repurchase of the receivable by the party committing such a breach:

With respect to any Receivable purchased by Factor from Vendor hereunder, Factor may require Vendor to repurchase all or any portion of such Receivable, or all or any portion of all Receivables owed by an Account Debtor, if . . . any Invoice is paid directly to Vendor and said payment is not delivered to Factor within 24 hours of receipt thereof.

(*Id.* at 37-38, ¶ 2(a)(6)).

The agreement also provides:

The price for each invoice evidencing a Receivable repurchased hereunder shall be the Advance Amount of the Invoice plus the Discount plus the Floating Discount minus any Amount Collected with respect to the particular Receivable being repurchased. The foregoing shall in no way eliminate Vendor's obligation to pay any and all costs

6

and expenses incurred in connection with respect to the Receivable being repurchased.

Upon the occurrence of any event requiring Vendor to repurchase any one or more of the Receivables sold by Vendor to Factor hereunder, Factor shall charge the Reserve to satisfy Vendor's Repurchase Obligation. Vendor, within two (2) days of oral or written notice from Factor shall cause funds in the amount directed by Factor to be delivered to Factor for deposit in the Reserve.

(*Id.* at 38, ¶ 2(b) & (c)).

The signature page provides, in pertinent part:

Now to these presents came and intervened, John Lee Harden, Jr., Richard G. Poore and Carlos Johnson (collectively "Guarantor" whether one or more), who acknowledges, agrees to and joins into this Agreement, including all obligations covenants, representations and warranties contained herein, both as of the date hereof and until this Agreement is terminated as provided herein, and thereafter until all obligations of Vendor hereunder are fully satisfied and discharged, and who personally, unconditionally and in solido with Vendor guarantees any and all obligations of Vendor hereunder.

(*Id.* at 45). Beneath that paragraph are the signatures of: (1) Louis K Greenblatt, President of BrooksGreenblatt, signing on behalf of BrooksGreenblatt; (2) John Lee Harden, Jr., signing on behalf of Superior; (3) John Lee Harden, Jr., signing individually as guarantor; (4) Richard G. Poore, signing individually as guarantor; and (5) Carlos Johnson, signing individually as guarantor (*id.*).

7

## LAW AND DISCUSSION

### A. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Independent School District*, 113, F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2411, 91 L.Ed.2d 202 (1986). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

As is noted *supra*, the undisputed facts establish, for purposes of the pending motion for summary judgment, that BrooksGreenblatt, now known as Fidelity, entered into a Factoring and Security Agreement with Superior. The undisputed facts further establish that defendant, John Lee Harden, Jr., as managing member of Superior, signed the Factoring Agreement on behalf of Superior and that he also

8

signed the agreement in his individual capacity as a guarantor. The undisputed facts also establish that Superior assigned to Fidelity, and granted a security interest to Fidelity in, the invoices and accounts receivable owed by C. Martin to Superior. It is also undisputed that Fidelity agreed to subrogate to C. Martin its rights under the Factoring Agreement.[5]

Having reviewed the submitted Act of Release, Conventional Subrogation and Assignment (doc. 116, pp. 131-133), the Court concludes that the undisputed facts establish, for purposes of the pending motion for summary judgment, that Fidelity validly subrogated to C. Martin all of its rights against the defendants under the Factoring Agreement. Accordingly, the Court finds that C. Martin has standing to pursue claims made under to the Factoring Agreement.

Pursuant to the Factoring Agreement, Superior was obligated to forward to Fidelity, within twenty-four hours, any payment received by Superior on any receivable that Superior assigned to Fidelity. The undisputed facts establish that Superior received a payment of $290,000.00 on a C. Martin receivable that Superior had assigned to Fidelity. The undisputed facts also establish that Superior failed to forward that payment to Fidelity as was required by the Factoring Agreement,

---

[5] See, La.Civ.Code art. 1827:

   An obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even without the obligor's consent. That subrogation is subject to the rules governing assignment of rights.

and that Superior, instead, used the C. Martin payment to pay debts that it owed to its own subcontractors.

Defendant, Harden, does not contest C. Martin's assertion that Superior breached the Factoring Agreement by failing to forward to Fidelity the $290,000.00 payment that it received from C. Martin, nor does he contest his alleged status as a guarantor of the obligations imposed on Superior under the agreement. Instead, Harden alleges that Superior encountered financial difficulty due to late payments from C. Martin, and he asserts that Superior breached the Factoring Agreement with Fidelity in order to protect C. Martin by using the $290,000.00 to pay Superior's own sub-contractors who had worked on the C. Martin project (doc. 117, pp. 1-5). He also argues that C. Martin is at fault for having mailed the check directly to Superior rather than to Fidelity (*id.* at 2).

The Court finds no merit in defendant's argument. Insofar as plaintiff argues that late payments from C. Martin may have contributed to Superior's difficulty in paying its subcontractors, it is well-established that "contract law gives the parties to a venture the freedom to allocate risks as they see fit." *Wiltz v. Bayer CropScience Ltd. Partnership,* 645 F.3d 690, 697, n. 9 (5th Cir. 2011) (quoting, *Mt. Lebanon Personal Care Home, Inc., v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). Thus the parties were free to allocate the risks associated with late payments at the time they made the original contract. That they did not do so to ultimate benefit of Superior is not an issue before the court, and "courts are not to

10

disturb the allocation of risks established by the parties." *Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 414 (5th Cir. 1998).

Insofar as Harden argues that C. Martin may have caused the breach by mailing the payment directly to Superior, defendant has not directed the Court to any evidence in the record that indicates C. Martin was contractually obligated to mail payments to Fidelity rather than to C. Martin. Moreover, the Court notes that the contract between Superior and Fidelity specifically provided that Superior should either forward such a payment to Fidelity within twenty-four hours, or be prepared to pay a penalty and repurchase the receivable. Thus, Superior agreed to assume the risk associated with a payment sent directly to its office.

For all of the foregoing reasons, the Court concludes that no genuine dispute of fact exists as to: (1) whether C. Martin was validly subrogated to Fidelity's rights with regard to defendants, Superior Logistics, LLC, John Lee Harden, Richard G. Poore, and Carlos Johnson, under the Factoring Agreement; (2) whether Superior breached a valid contractual obligation to forward the $290,000.00 payment to Fidelity; and (3) whether defendant, John Lee Harden, Jr., is obligated in solido with Superior as a guarantor of the obligations imposed on Superior by the agreement.

Accordingly, the Court concludes that summary judgment is proper insofar as C. Martin seeks a finding of liability for breach of contract in that: (1) C. Martin was validly subrogated to Fidelity's rights with regard to defendants, Superior

Case 3:08-cv-00454-BAJ -SCR   Document 124   03/16/12   Page 11 of 16

Logistics, LLC, John Lee Harden, Richard G. Poore, and Carlos Johnson, under the Factoring Agreement; (2) Superior breached a valid contractual obligation under the Factoring Agreement to forward the $290,000.00 payment to Fidelity; and (3) defendant, John Lee Harden, Jr., is obligated, in solido, with Superior as a guarantor of the obligations imposed on Superior by the agreement.

As is noted *supra,* the plain language of the Factoring Agreement provides that, should Superior fail to properly deliver or remit a payment to Fidelity, Superior "agrees to pay a penalty of fifteen (15.00%) of the amount of such payment" and to repurchase the receivable. The agreement further provides that the repurchase price "shall be the Advance Amount of the Invoice plus the Discount plus the Floating Discount minus any Amount Collected with respect to the particular Receivable being repurchased." The Court also notes that Superior was obligated under the agreement to maintain a reserve with Fidelity and the agreement specifically provides that, upon the occurrence of "any event requiring Vendor to repurchase any one or more of the Receivables sold by Vendor to Factor hereunder, Factor shall charge the Reserve to satisfy Vendor's Repurchase Obligation" (doc. 116, pp. 37, 38, ¶¶ 1(g), 2(b)).

It is well established that a "conventional subrogee is substituted to all of the rights of the original obligee." La.Civ.Code art. 1827, official comment (d). Thus, in determining quantum for purposes of the pending motion for summary judgment,

12

the question before the Court is not necessarily what C. Martin paid for subrogation, but is, instead, whether the amount sought by C. Martin is less than or equal to the amount due C. Martin in light of the breach and the specific rights Fidelity assigned to C. Martin through the act of subrogation.

The Court finds insufficient evidence in the record to establish: (1) the actual amount of the repurchase price of the C. Martin receivable as provided by the agreement, (2) whether any penalty was previously paid to Fidelity, and (3) whether any of Superior's obligations were previously satisfied from the reserve as is provided by the agreement. In summary, the Court finds insufficient evidence in the record to establish the amount due C. Martin under the Factoring Agreement and the act of subrogation.

Accordingly, genuine issues of fact exist which preclude summary judgment as to the amount due C. Martin for Superior's breach of its obligation under the Factoring Agreement to forward C. Martin's $290,000.00 payment to Fidelity.

## B. Motion for Default Judgment

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead and Savings, Ass'n.*, 874 F.2d 274, 276 (5th Cir. 1989). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c). To obtain a default judgment, the movant must first

13

establish that the defaulting defendant has been properly served and has failed to plead or otherwise defend. Fed.R.Civ.P. 55. Moreover, the plaintiff must present competent evidence to establish a prima facie case. *In re Dorland*, 105 F.3d 656, 2 (5th Cir. 1996).

As is noted *supra*, evidence has been presented that indicates that Fidelity validly subrogated its rights under the Factoring Agreement to C. Martin. A review of the record demonstrates that neither Richard G. Poore nor Carlos Johnson have made an appearance in this matter and that the Clerk of Court entered a preliminary default as to defendants, Richard G. Poore and Carlos Johnson, on January 21, 2009 (docs. 47 & 48, respectively). The record also establishes that Richard G. Poore and Carlos Johnson were served with the complaint in this matter (docs. 33 & 43, respectively).

The Court also finds, for all of the reasons noted in the summary judgment analysis, that C. Martin has set forth a prima facie case to establish contractual liability on the part of Superior and to establish that defendants, Poore and Johnson are liable, in solido, with Superior and Harden as guarantors for the obligations imposed on Superior by the Factoring Agreement. The Court, however, also finds, for the reasons noted in the summary judgment analysis, that C. Martin has failed to set forth evidence to establish a prima facie case as to the exact amount due C. Martin under the Factoring Agreement.

14

Accordingly, the motion for default judgment shall be granted insofar as C. Martin seeks a default judgment that defendants, Richard G. Poore and Carlos Johnson, are liable in solido with defendants, Superior, and John Lee Harden, Jr., as guarantors of the obligations imposed on Superior by the Factoring Agreement, but the motion shall be denied insofar as C. Martin seeks as specific finding at this time of the amount due for the contractual breach by Superior.

## CONCLUSION

For all of the foregoing reasons, the motion (doc. 116) by third-party plaintiff, C. Martin Company, Inc., for summary judgment as to its claims against defendants Superior Logistics, LLC, and John Lee Harden, Jr., is **GRANTED** insofar as the movant seeks a determination that: (1) C. Martin Company, Inc., was validly subrogated to Fidelity's rights with regard to defendants, Superior Logistics, LLC, John Lee Harden, Richard G. Poore, and Carlos Johnson, under the Factoring Agreement; (2) that Superior Logistics, LLC, breached the Factoring Agreement by failing to forward to Fidelity the $290,000.00 payment made by C. Martin to Superior; and (3) that defendant, John Lee Harden, Jr., is liable, in solido, with defendant, Superior Logistics, LLC, as a guarantor of its obligations under the Factoring Agreement. The motion for summary judgment is **DENIED** insofar as C. Martin Company, Inc., seeks a determination as to the actual amount due for the breach under the Factoring Agreement.

15

The motion by third-party plaintiff, C. Martin Company, Inc., for default judgment is **GRANTED** only insofar as movant seeks a determination by the Court that defendants, Richard G. Poore and Carlos Johnson, are liable to C. Martin Company, Inc., in solido, with defendants, Superior Logistics, LLC, and John Lee Harden, Jr., as guarantors of the obligations of Superior Logistics, LLC, under the Factoring Agreement, and the motion for default judgment is **DENIED** otherwise.

Baton Rouge, Louisiana, March __16__, 2012.


_____
BRIAN A. JACKSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA